IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| WILLIE G. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 126-105 |
| | ) | |
| WALTON RESIDENTIAL SERVICES; | ) | |
| KISHA CAREY-SPANN; JACQULYN | ) | |
| MIMS; CHRISTIS MIMS; JESSICA | ) | |
| JACKSON; USAA GENERAL | ) | |
| INDEMNITY COMPANY; LASHANDA | ) | |
| CARLOS; CHASSIE (USAA); ASHLEY | ) | |
| (USAA); VICTORIA LOMBRANA; | ) | |
| REBECCA ANDERSON; DIANA | ) | |
| MOSLEY; BROOKS K. HUDSON OF | ) | |
| HALL BARRETT, P.C.; LUCY JACKSON | ) | |
| BELL; THOMAS B. "BRITT" | ) | |
| HAMMOND; THE GEORGIA | ) | |
| OFFICE OF COMMISSIONER OF | ) | |
| INSURANCE; JOHN F. KING; and | ) | |
| MENASE ZEWDE, | ) | |
| | ) | |
| Defendants.[1] | ) | |

**MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION**

Plaintiff commenced the above-captioned case *pro se* and has requested permission to proceed *in forma pauperis* ("IFP"). Having considered Plaintiff's IFP motion, the Court **GRANTS** the request to proceed IFP, for the purpose of dismissal only. (Doc. no. 2.)

---

[1] The Court **DIRECTS** the **CLERK** to update the list of Defendants on the docket in accordance with the above caption, which is consistent with Plaintiff's complaint. (Doc. no. 1, pp. 1, 13-14.) In particular, Plaintiff names John F. King and Menase Zewde as individual Defendants.

I.      **Screening the Complaint**

   A.      **Background**

Because Plaintiff is proceeding IFP, the complaint must be screened to protect potential defendants.  See Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*).

Plaintiff names the following Defendants:  (1) Walton Residential Services ("Walton Residential"), (2) Kisha Carey-Spann, (3) Jacqulyn Mims, (4) Christis Mims, (5) Jessica Jackson, (6) USAA General Indemnity Company ("USAA"), (7) Lashanda Carlos, (8) Chassie, (9) Ashley, (10) Victoria Lombrana, (11) Rebecca Anderson, (12) Diana Mosley, (13) Brooks K. Hudson, (14) Lucy Jackson Bell, (15) Thomas B. "Britt" Hammond, (16) The Georgia Office of Commissioner of Insurance, (17) John F. King, and (18) Menase Zewde. (Doc. no. 1, p. 1.)  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Since 2014, Plaintiff has maintained ADA accommodations requiring communication only in writing and written notice before "any non-emergency entry" into Plaintiff's apartment. (Id. at 4.)  These accommodations mitigate Plaintiff's PTSD, "thunderclap headaches," and traumatic brain injury.  (Id.)  On August 8, 2019, Plaintiff reported a neighboring resident in his apartment complex for illicit drug activities.  (Id.)  Thereafter, Defendants Housing Director Carey-Spann and Jacqulyn Mims began harassing Plaintiff, including by deliberately ignoring Plaintiff's ADA accommodations and entering Plaintiff's apartment "via contrived HUD [Real Estate Assessment Center ("REAC")] inspections."  (Id.)

On March 5, 2020, Defendant Jacqulyn Mims falsified a HUD REAC inspection as pretext to enter Plaintiff's apartment.  (Id. at 5.)  Although Plaintiff "peacefully asserted his rights" to protest her entry,  Defendant Jacqulyn Mims called the McDuffie County Sheriff's Office to secure a law enforcement presence and fabricated a report of an "irate resident." (Id.)

The false March 5th HUD REAC inspection was covered up by an authentic inspection on March 6, 2020.  (Id.)

In April 2022, Plaintiff retained Defendant Bell, an attorney, "to seek accountability for the fake 911 call."  (Id.)  However, as part of an agreement with Defendant Carey-Spann, Defendant Bell "intentionally guarantee[d]" that the case would fail for lack of personal jurisdiction.  (Id.)  The case was wrongly dismissed nearly two years later based on the statute of limitations, and Defendant Bell deliberately refused to correct the state court judge's error.  (Id.)  To guarantee Plaintiff's case was dismissed, Defendant Bell "explicitly weaponized" Plaintiff's traumatic brain injury by "painting him as unreliable."  (Id. at 5-6.)

On December 24, 2022, a severe winter storm caused pipes to burst, resulting in a four-hour flood that damaged Plaintiff's apartment and prompted toxic mold growth.  (Id. at 6.)  Defendants Carey-Spann and Jacqulyn Mims "issued a coercive, retaliatory 48-hour eviction threat in the form of a letter dated January 12, 2023."  (Id.; see also id. at 23-24.)  Based on this letter, Defendant Carlos, an adjuster for USAA, denied Plaintiff's claim for coverage under his insurance policy.  (Id. at 6.)  The mold caused Plaintiff to suffer "acute mold toxicity, severe respiratory distress, and a complete loss of physical balance resulting in a collapse on January 17, 2023, in a hotel room" where Plaintiff was staying while displaced from his apartment.  (Id.)

In early 2023, Defendant Jackson secured HUD approval for approximately $120,000 in renovations for four apartment units based on the December flood, which was an inflated price.  (Id. at 6-7.)  However, Defendant Carey-Spann directed only "bare-minimum, cosmetic fixes" to the units.  (Id. at 7.)   For example, she ordered the water-saturated ceiling walls not be demolished and ignored electrical hazards like faulty wiring and circuit breakers.  (Id.)

Further, a disability toilet replacement had "such shoddy workmanship" that fecal matter seeped from the base, causing Plaintiff to develop "a persistent crustacean" on his scalp. (Id.)

At some point,[2] Defendant Chassie, an adjuster for USAA, "executed a deceptive accounting scheme regarding Plaintiff's U-Haul rental expenses" for the U-Haul rental truck parked outside of Plaintiff's apartment. (Id. at 7-8.) Plaintiff was reimbursed $6,638.84 for five months of U-Haul rental expenses, but Defendant Chassie mischaracterized and deducted the amount against Plaintiff's personal property limits, in turn "artificially exhausting the policy and stealing the funds back." (Id. at 8.)

On May 12, 2023, Defendant Chassie, as part of a scheme to prematurely terminate Plaintiff's "Additional Living Expenses (ALE)" from his insurance policy, sent a message to Plaintiff claiming that Plaintiff's apartment would be ready to reenter on May 16. (Id.) On this premise, Defendant Chassie "maliciously doctored" another message to enforce a "fabricated" May 19 cutoff for the ALE benefits. (Id.) However, a notice from Defendant Christis Mims later confirmed that the unit was not ready until June 6, 2023. (Id.; see also id. at 25-27.) No HUD inspection occurred after the five-month renovations period despite Plaintiff's protests about the toxic mold spores. (Id. at 8.)

On May 30, 2023, Plaintiff formally demanded a HUD REAC inspection because of visible hazards. (Id. at 9.) Defendant Carey-Spann circulated fliers announcing an inspection to pacify Plaintiff's demand. (Id.; see also id. at 28-30.) On September 27, 2023, Defendant Jackson arrived at Plaintiff's apartment and used "her federal credentials to conduct a phantom, off-the-books inspection." (Id. at 9.) Defendant Jackson confirmed observing the severe mold, exclaiming "You got that!" to a maintenance man. (Id.) The finding was, however,

---

[2] No dates are given for these events but based on the general chronological structure of the complaint, the Court will construe that these events occurred following the December 2022 flood.

"intentionally suppressed," and a January 2024 "FOIA Final Response" confirmed no record of the September 27, 2023, inspection in "federal HUD databases." (Id.)

On November 17, 2023, Plaintiff filed a "formal Notice of Intent" detailing Defendant USAA's fraud with state regulators. (Id.) On January 24, 2024, Defendant Ashley, a regulatory analyst with USAA, submitted a response to Defendant Georgia Office of Commissioner of Insurance ("OCI"). (Id.; see also id. at 33-36.) In this response, Defendant Ashley falsely claimed that Defendant USAA possessed documents proving the apartment was habitable on May 16, 2023. (Id. at 9.) However, Defendant USAA was aware that the unit was not ready until June 6, 2023. (Id. at 9-10.)

In January 2024, Defendants Carey-Spann and Walton Residential, without legal authority, initiated an eviction action in state court "to permanently silence the Plaintiff's whistleblower activities[.]" (Id. at 10, 13; see also id. at 31-32.) Plaintiff removed the action to federal court on March 18, 2024, and it was remanded on April 30, 2024. (Id. at 10.) However, Defendant Judge Hammond held a state court hearing before remand on April 29, 2024. (Id.) Plaintiff made "at least four" requests for "serious ADA reasonable accommodations" to the state court and opposing parties between January and May 29, 2024, but his requests were disregarded. (Id. at 10-11.) On May 6, 2024, Defendant Judge Hammond issued a "void summary judgment" despite lacking jurisdiction. (Id. at 11.)

Defendant Hudson, relying on the summary judgment order, secured a writ of possession on May 10, 2024. (Id.) Plaintiff filed an appeal with the Georgia Court of Appeals on May 16, 2024. (Id.) The state court faxed four pages of "dispossessory materials" to Defendant Walton Residential on May 28, 2024. (Id.)

On May 29, 2024, deputies of the McDuffie County Sheriff's Office along with personnel associated with "Walton Community Services, Inc." executed the physical lockout

and forcibly removed Plaintiff from the premises.  (Id. at 11-12.)  The deputies "exercised extreme [d]eliberate [i]ndifference" to Plaintiff's medical distress from breathing in the mold.  (Id. at 12.)  On May 29, 2024, Plaintiff drove to the VA Medical Center in Augusta, was admitted, and remained hospitalized until May 31, 2024.  (Id.)  As a result, Plaintiff was unable to protect or recover his property following its removal from his apartment, and $125,000 of personal property was stolen.  (Id.)

After the eviction, Plaintiff applied to Defendant USAA for benefits based on his loss of property.  (Id.)  Defendants Lombrana, Anderson, and Mosley, all adjusters for USAA, "willfully mischaracterized" the "$33,067.22 theft and conversion" as excluded from coverage.  (Id.)  Plaintiff's claim was denied on June 7, 2024, because the damage to his "personal property wasn't caused by any of the perils listed in [his] policy."  (Id.)  Around this time Defendants Georgia OCI Commissioner John F. King and Analyst Menase Zewde "abdicated their regulatory duty" and ignored Plaintiff's formal petition "to shield USAA's violations" for three months.  (Id. at 13.)

Plaintiff filed the instant complaint on June 1, 2026.  (Doc. no. 1, p. 20.)  He brings the following claims: (1) deprivation of rights under color of state law under 42 U.S.C. § 1983 against Defendants Judge Hammond, Carey-Spann, Walton Residential, Hudson, OCI, Commissioner King, and Analyst Zewde;[3] (2) conspiracy to interfere with rights under 42 U.S.C. § 1985(3) against Defendants generally; (3) violations of the False Claims Act, 31 U.S.C. §§ 3729-3733, against Defendants Jackson and Carey-Spann; (4) violations of the Americans with Disabilities Act ("ADA") against Defendants generally; (5) violations of the Fair Housing Act

---

[3] Plaintiff also seems to suggest that the McDuffie County Sheriff's deputies who executed the lockout also violated his constitutional rights.  (Doc. no. 1, pp. 13-14.)  However, no deputy is named as a defendant in the complaint.

("FHA") against Defendants generally; and (6) bad faith breach of insurance contract under O.C.G.A. § 33-4-6 against Defendants USAA, Carlos, Lombrana, Anderson, Mosley, Chassie, and Ashley. (Id. at 13-17.)[4]

Plaintiff seeks declaratory and monetary relief. (Id. at 18-19.) In particular, Plaintiff seeks compensatory damages, contractual damages, punitive damages, and statutory bad-faith penalties. (Id. at 18-19.)

### B.    Discussion

#### 1.    Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual

---

[4] Plaintiff additionally states in a section labelled "JURISDICTION AND VENUE" that he is bringing claims under Section 504 of the Rehabilitation Act (29 U.S.C. § 794) and the Privacy Act (5 U.S.C. § 552a). (Doc. no. 1, p. 3.) However, he does not mention these statutes elsewhere nor develop these claims, (see generally id. at 1-20), and thus the Court will not address them further.

allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  The complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*).  However, this liberal construction does not mean that the Court has a duty to re-write the complaint.  See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff's § 1983, § 1985(3), ADA, and FHA Claims Are Barred by the Applicable Statute of Limitations

#### a. § 1983 Claim

State law controls the length of the statute of limitations period in § 1983 actions. Chapman v. Dunn, 129 F.4th 1307, 1315 (11th Cir. 2025); Abreu-Velez v. Bd. of Regents of Univ. Sys. of Ga., 248 F. App'x 116, 117 (11th Cir. 2007) (*per curiam*).  In Georgia, such claims for injuries to the person must be brought within two years of their accrual.  Richards v. Cobb Cnty., Ga., 487 F. App'x 556, 557 (11th Cir. 2012) (*per curiam*); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986); O.C.G.A. § 9-3-33.  Although state law determines the applicable statute of limitations period for claims under § 1983, federal law

8

determines the date of accrual.  See Chapman, 129 F.4th at 1315 (citing Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996)).  Under § 1983, a claim accrues "once the plaintiff knows or should know 'the injury that forms the basis of [his] complaint,' as well as who caused that injury."  Id. (citing Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003) (*per curiam*)); see also Brown v. Georgia Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003) (*per curiam*).

Here, Plaintiff filed his complaint on June 1, 2026.  (Doc. no. 1, p. 20.)  In his § 1983 claim, Plaintiff alleges Defendants Judge Hammond, Carey-Spann, Walton Residential Services, Hudson, King, and Zewde violated his rights by unlawfully seizing his property without due process on May 29, 2024.  (Id. at 13-14.)  As Plaintiff was physically present at the eviction that day, the facts which would support this claim were apparent to Plaintiff by May 29, 2024.  (Id. at 11-12.)  He thus had until May 29, 2026, to file this claim, but he did not file this claim by this date.  Instead, he filed it three days later on June 1, 2026.  Therefore, this claim is outside of the two-year statute of limitations period and subject to dismissal.

Plaintiff appears to recognize his claims[5] are barred by the statute of limitations, as he requests equitable tolling extend the limitations period.  Specifically, he states:

> Plaintiff was hospitalized at the VA Medical Center in Augusta, Georgia from May 29, 2024, through May 31, 2024, due to acute medical distress caused by the ultra vires eviction and prolonged exposure to toxic mold.  This three-day period of hospitalization constitutes grounds for equitable tolling of the statute of limitations.  Equitable tolling is appropriate where a plaintiff has been pursuing their rights diligently and some extraordinary circumstance stood in their way.  Holland v. Florida, 560 U.S. 631, 649 (2010).  Plaintiff's hospitalization immediately following the May 29, 2024, ultra vires eviction qualifies as such an extraordinary circumstance.

---

[5] The Court addresses equitable tolling as it relates to Plaintiff's other time-barred claims in Section I.B.2 herein.

(Id. at 2.)

"In a § 1983 action, federal courts generally refer to state law for tolling rules, just as they do for the length of a statute of limitations." Salmon v. Jones, 787 F. App'x 639, 641 (11th Cir. 2019) (*per curiam*). Although Plaintiff makes no argument for statutory tolling, for the sake of completeness, the Court finds no basis for statutory tolling under Georgia law. See OCGA §§ 9-3-90 to 99; see also Brown v. Patton, No. 5:21-CV-82, 2022 WL 1819061, at *2 (S.D. Ga. May 11, 2022) (summarizing Georgia statutory tolling provisions), *adopted by* No. 2022 WL 1811193 (S.D. Ga. June 2, 2022). As for non-statutory equitable tolling, "[t]he only discussion of non-statutory equitable tolling in the Georgia courts occurred in the context of a class action lawsuit." Hicks v. City of Savannah, No. CV408-006, 2008 WL 2677128, at *2 (S.D. Ga. July 8, 2008) (citing State v. Priv. Truck Council, Inc., 258 Ga. 531, 371 S.E.2d 378 (Ga. 1988)); see also Stubbs v. Hall, 308 Ga. 354, 369–70, 840 S.E.2d 407, 419 (2020) ("[W]e have found only one case in which this Court even *discusses* equitable tolling." (citing Priv. Truck Council, 258 Ga. at 533)). Because Plaintiff does not bring a class action, the statute of limitations is not tolled under Georgia's non-statutory equitable tolling doctrine.

"In at least one case, the Eleventh Circuit has applied 'the federal doctrine of equitable tolling' in a § 1983 case, where the applicable limitations were established by Georgia law." Ballard v. Kesner, No. CV421-005, 2023 WL 2450175, at *9 (S.D. Ga. Jan. 6, 2023) (quoting Zamudio v. Haskins, 775 F. App'x 614, 616 (11th Cir. 2019) (*per curiam*)), *adopted by* 2023 WL 1794804 (S.D. Ga. Feb. 7, 2023), *appeal dismissed*, No. 23-10972-C, 2023 WL 6166555 (11th Cir. June 28, 2023). "The general test for equitable tolling requires the party seeking tolling to prove that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." Rager v. Augustine, 760 F. App'x

10

947, 950-51 (11th Cir. 2019) (*per curiam*) (citing Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 971 (11th Cir. 2016)).   In other words, "[e]quitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are beyond his control and unavoidable even with diligence, which the plaintiff bears the burden of showing." Id.; see also Salas v. Pierce, 297 F. App'x 874, 877 (11th Cir. 2008) (*per curiam*).

Here, Plaintiff has failed to carry his burden to show he was pursuing his rights diligently and that his hospitalization from May 29, 2024, to May 31, 2024, is an extraordinary circumstance that prevented him from timely filing his § 1983 claim.   First, other than generally alleging he was hospitalized "due to acute medical distress caused by" the eviction and prolonged mold exposure, he provides no detail about his hospitalization whatsoever. (Doc. no. 1, p. 2.)  He does not specify the type of injuries he suffered, their duration, and most importantly, their impact on his ability to timely file his § 1983 claim.   (See generally id.) Because he does not provide specific factual support about his medical condition, Plaintiff fails to carry his burden to establish his three-day hospitalization was an extraordinary circumstance that prevented timely filing.  See Lutgen v. United States, No. 18-CR-60035, 2023 WL 2475309, at *6 (S.D. Fla. Mar. 13, 2023) (finding no equitable tolling where petitioner "[fell] far short of alleging 'specific facts'" about his medical injury).

Moreover, even if Plaintiff's three-day hospitalization constituted an extraordinary circumstance, Plaintiff fails to show he was pursuing his rights diligently.   He offers no explanation for what he did "before, during, or after" his hospitalization to sufficiently demonstrate diligence.  See Mingst v. Dixon, No. 22-81739-CIV, 2022 WL 16857028, at *5 (S.D. Fla. Nov. 10, 2022) (concluding petitioner failed to meet equitable tolling burden where he gave no details about stroke other than to describe it as "severe").   Indeed, Plaintiff was

11

hospitalized at the very beginning of the limitations period and thus had ample opportunity to bring his § 1983 claim after his hospitalization but failed to do so.  Further, Plaintiff's request for tolling shows that he was well-aware of the deadline.  Accordingly, the Court finds, in these circumstances, Plaintiff failed to meet his burden, and equitable tolling is not warranted.  See Wallace v. Kato, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.").

In sum, Plaintiff's § 1983 claim should be dismissed because the applicable statute of limitations expired, and he is not entitled to equitable tolling.

### b.    § 1985(3) Claim

Plaintiff brings a claim against Defendants generally for conspiracy to interfere with rights under 42 U.S.C. § 1985(3).  (Doc. no. 1, pp. 14-15.)   However, his § 1985(3) claim is barred by the applicable statute of limitations.

"Conspiracy claims under section 1985 share the forum state's statute of limitations for tort claims. . . . In Georgia's case, that's two years."  Wainberg v. Mellichamp, 93 F.4th 1221, 1225 (11th Cir. 2024) (per curiam) (citing Rozar, 85 F.3d at 560-61).  "[F]ederal law determines when the cause of action for federal civil-rights claims accrues—in other words, when the statute of limitations begins to run.  As a general matter, that occurs when facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  Id. (citation modified) (citing Rozar, 85 F.3d at 561-62).

The complaint was filed on June 1, 2026.  The events that Plaintiff cites in support of his § 1985(3) claim are Defendant Carey-Spann's purported "weaponization" of Plaintiff's disability,[6]

---

[6]  Although the complaint does not describe which specific act by Defendant Carey-Spann constituted weaponization, it appears to be the alleged collusion with Defendant Bell in the April 2022 lawsuit.

Defendant Bell's sabotage of Plaintiff's prior lawsuit in 2022, Defendant Chassie's fraudulent accounting scheme and record doctoring in 2023, and Defendant Jackson's September 27, 2023, "phantom inspection." (Doc. no. 1, pp. 14-15.) Plaintiff claims these events ultimately resulted in his loss of housing and personal property via the May 29, 2024 eviction. (Id. at 15.)

Assuming *arguendo* the May 29, 2024 eviction is "the conspiratorial act underlying the section 1985 claim,"[7] see Wainberg, 93 F.4th at 1226, then Plaintiff's § 1985(3) claim accrues, and the statute of limitations began to run, on this date. Plaintiff provides no reasons why he was not aware of the facts supporting his § 1985(3) claim by this date. Indeed, he was present at the eviction, and he also was aware of the other events alleged in support of this claim. (Id. at 9.) In particular, he was also present at the September 27, 2023, inspection, and he stated that he filed a notice with state regulators "detailing the adjusters' fraud" on November 17, 2023, meaning he must have been aware of Defendant Chassie's alleged conduct at least by then. (Id.) In sum, because the facts supporting Plaintiff's § 1985(3) claim were apparent by May 29, 2024, if not even earlier, this claim is also time-barred by the applicable two-year statute of limitations.

Furthermore, for the same reasons outlined above, equitable tolling is not appropriate in this case under both state and federal tolling rules. See Melvin v. Troy Univ., 609 F. Supp. 3d 1262, 1271 n.8 (M.D. Ala. 2022) (explaining "[s]tate law governs the tolling of claims under . . . [§] 1985" and applying Alabama tolling law).

### c.    ADA Claim Under Title III

As an initial matter, Plaintiff does not specify the ADA provision under which he is suing.

---

[7] Plaintiff only describes acts in furtherance of the conspiracy committed by Defendants Carey-Spann, Bell, Jackson, and Chassie. (Doc. no. 1, p. 15.) It is thus unclear what he alleges the other Defendants did to further this conspiracy. Nonetheless, for the sake of argument, the Court uses May 29, 2024, the latest possible deadline for calculating the statute of limitations, in its analysis to establish that Plaintiff's § 1985(3) claim is time-barred even using the latest possible date of accrual.

"The ADA covers three main types of discrimination, each of which is addressed in one of the statute's three main subchapters:  Title I prohibits discrimination in private employment; Title II prohibits discrimination by public entities (state or local governments); and Title III prohibits discrimination by a 'place of public accommodation,' which is a private entity that offers commercial services to the public." Price v. City of Ocala, Fla., 375 F. Supp. 3d 1264, 1268 (M.D. Fla. 2019) (quoting A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc., 900 F.3d 1270, 1289 (11th Cir. 2018)).

Here, Plaintiff is not complaining about an employer, so Title I is not applicable.  Because Defendants are largely not State or local government entities, they cannot be sued under Title II.  Additionally, Plaintiff does not allege any specific acts or omissions on the part of Defendants King and Zewde for his ADA claim, and Judge Hammond has absolute judicial immunity to claims of money damages under the ADA.  See Badillo v. Thorpe, 158 F. App'x 208, 211 (11th Cir. 2005) (*per curiam*).  To the extent the complaint is construed as seeking personal liability for Judge Hammond under Title II, it fails because "there is no individual capacity liability under Title II of the ADA . . . ." Id. (citing Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001)).

Thus, it appears Plaintiff is alleging an ADA claim under Title III, 42 U.S.C. §§ 12181-12189, which prohibits discrimination by "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.  Because Title III of the ADA does not contain a statute of limitations, claims are "governed by the most analogous state statute of limitations." Kennedy v. S. Univ., No. 4:21-CV-172, 2022 WL 628541, at *4 (S.D. Ga. Mar. 3, 2022) (quoting Hunt v. Georgia Dep't of Comm. Affs., 490 F. App'x 196, 197 (11th Cir. 2012) (*per curiam*)); see also Silva v. Baptist Health S. Fla., Inc., 856 F.3d 824, 841

14

(11th Cir. 2017) (applying Florida's statute of limitations for personal injury actions to claims under Title III of the ADA). "In Georgia, that statute is O.C.G.A. § 9-3-33," which "provides that 'actions for injuries to the person shall be brought within two years after the right of action accrues.'" Kennedy, 2022 WL 628541, at *4 (quoting O.C.G.A. § 9-3-33).

Plaintiff filed the complaint on June 1, 2026. For his ADA claim, Plaintiff alleges facts concerning Defendant Mims' "unauthorized entry" into his apartment on March 5, 2020, a January 2023 "coercive eviction threat" letter by Defendants Carey-Spann and USAA, Defendant Jackson's "phantom inspection" on September 27, 2023, and the disregard of ADA accommodations requests he filed between January 11, 2024, to May 29, 2024. (Doc. no. 1, pp. 15-16.) Thus, at the very latest, Plaintiff's ADA claim accrued on May 29, 2024, and applying the two-year statute of limitations, he was required to file his ADA claim by May 29, 2026. Because he brought his ADA claim after that date, it is time-barred.

Furthermore, for the same reasons outlined above, equitable tolling is not appropriate for this claim. See Hunt, 490 F. App'x at 198 (finding plaintiff failed to show extraordinary circumstances to warrant equitable tolling of ADA claim); Mitchell v. Alabama, No. 2:17-CV-768, 2018 WL 2107218, at *3 (M.D. Ala. Apr. 10, 2018) (concluding plaintiffs failed to establish equitable tolling for untimely ADA claim), *adopted by* 2018 WL 2107219 (M.D. Ala. May 7, 2018).

### d.    FHA Claim

As is relevant here, the FHA forbids discrimination in the sale or rental of dwellings. 42 U.S.C. § 3604. A plaintiff in an FHA suit "may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ." Id. § 3613(a)(1)(A). This statute of limitations "begins to run as soon as facts supportive of the

cause of action are or should be apparent to a reasonably prudent person similarly situated." Telesca v. Vill. of Kings Creek Condo. Ass'n, Inc., 390 F. App'x 877, 882 (11th Cir. 2010) (*per curiam*) (internal quotation marks and citation omitted).

Plaintiff filed the complaint on June 1, 2026 and raises the same facts for his FHA claim as he did for his ADA claim, i.e., the March 5, 2020 unauthorized entry by Defendant Jacqulyn Mims, the January 2023 "coercive eviction threat," the "phantom inspection" on September 7, 2023, by Defendant Jackson, and ADA accommodation requests that went unanswered between January 2024 to May 29, 2024. (Doc. no. 1, p. 16.) Assuming *arguendo* these actions and omissions constitute discriminatory housing practices under the FHA, these facts were apparent to Plaintiff by May 29, 2024, at the very latest, and thus Plaintiff's FHA claims are barred by the two-year statute of limitations.

Furthermore, for the same reasons outlined above, equitable tolling is not appropriate for Plaintiff's FHA claim. Tillery v. Darby-Rogers Co., No. 3:05CV763 J33MCR, 2006 WL 2735162, at *4 (M.D. Fla. Sept. 25, 2006) (applying equitable tolling to FHA claim's two-year statute of limitations). Neither is statutory tolling under the FHA. See 42 U.S.C. § 3613(a)(1)(B) (tolling FHA claims for "any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice").

### e.      Continuing Violation Doctrine

As explained above, Plaintiff's § 1983, § 1985(3), ADA, and FHA claims are all time-barred by their respective statutes of limitations, and he fails to establish he is entitled to equitable tolling. In his complaint, Plaintiff also appears to allege his claims are timely filed because of the continuing violation doctrine, as he claims the "the May 29, 2024, ultra vires eviction[] . . .

constitutes the final act of the continuing violation." (Doc. no. 1, p. 2.) "The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (11th Cir. 2006); see also Doe ex rel. Doe #6 v. Swearingen, 51 F.4th 1295, 1305 (11th Cir. 2022) ("If a defendant's actions violate a plaintiff's rights on a repeated or ongoing basis, then a cause of action may be timely even if the first violation took place outside the statute of limitations." (citation omitted)). "When the violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007) (*per curiam*) (citation omitted); see also Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth., 502 F.3d 1316, 1322 (11th Cir. 2007) ("Under the continuing violations doctrine, the statute of limitations is tolled for a claim that otherwise would be time-barred where the violation giving rise to the claim continues to occur within the limitations period.").

Here, by Plaintiff's own admission,[8] the unlawful conduct ceased on May 29, 2024, the date of his eviction.[9] (Doc. no. 1, p. 2.) As explained above, Plaintiff's § 1983, § 1985(3), ADA, and FHA claims all have a two-year statute of limitations. Thus, assuming *arguendo* the eviction was the final act of misconduct for these claims, the statutory limitations period began to run on May 29, 2024, and Plaintiff thus had until May 29, 2026, to bring these four claims. Because Plaintiff filed the instant complaint three days later on June 1, 2026, his claims concerning the May

---

[8] The Court assumes for the sake of argument that the May 29, 2024 eviction marks the day the unlawful conduct ceased for all four of Plaintiff's time-barred claims. However, Plaintiff complains about his accommodation requests being denied on May 29, 2024, not his eviction, for his ADA and FHA claims.

[9] Although Plaintiff alleges facts about some events occurring after May 29, 2024, in his complaint, these allegations solely concern his bad faith breach of contract claim under Georgia law for property loss insurance. (Doc. no. 1, pp. 12-13, 16-17.) Therefore, these facts are irrelevant to the instant analysis concerning the § 1983, § 1985(3), ADA, and FHA claims.

29, 2024 eviction are all time-barred.  Plaintiff does not allege any additional violations of the law that occurred within the limitations period for any of the above claims that are not time-barred. Therefore, because the statute of limitations for each claim has run, and no additional violations of the law occurred within the statutory periods, then the continuing violation doctrine is inapplicable and does not save Plaintiff's untimely claims.

For these reasons, Plaintiff's argument about the continuing violation doctrine fails, and these claims are still barred by the statute of limitations even considering the continuing violations doctrine.  Additionally, for the reasons elaborated on earlier, equitable tolling is unwarranted.

### 3. Plaintiff Cannot Bring a Claim Under the False Claims Act While Proceeding *Pro Se*

Plaintiff also brings a claim against Defendants Jackson and Carey-Spann for violations of the False Claims Act, 31 U.S.C. §§ 3729-3733, based on the 2023 payment of $120,000 for renovations and September 27, 2023 "off-the-books" inspection of Plaintiff's unit.  (Doc. no. 1, p. 15.)  However, claims alleging violations of the False Claims Act may not be brought by *pro se* litigants.  See Timson v. Sampson, 518 F.3d 870, 873-74 (11th Cir. 2008) (*per curiam*) (concluding *pro se* plaintiff could not bring a *qui tam* lawsuit while proceeding *pro se*).  "The Eleventh Circuit, like 'every other court of appeals to have addressed the question,' has held that *pro se* litigants cannot bring civil claims under the False Claims Act."  Toussaint v. U.S. Atty's Off., No. 24-10116, 2025 WL 2237376, at *4 (11th Cir. Aug. 6, 2025) (citation modified) (quoting United States ex rel. Feliciano v. Ardoin, 127 F.4th 382, 384 (D.C. Cir. 2025), and citing Timson, 518 F.3d at 873-874).  Therefore, this claim must be dismissed.

### 4. Plaintiff's State Law Claim Should Be Dismissed Without Prejudice

Finally, Plaintiff brings a state law bad faith breach of insurance contract claim under O.C.G.A. § 33-4-6 against Defendants USAA, Chassie, Carlos, Lombrana, Anderson, Mosley,

18

and Ashley.  (Doc. no. 1, pp. 16-17.)  However, this claim should be dismissed without prejudice so that Plaintiff may pursue it, if he so chooses, in state court.

Federal district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." Id. § 1367(a).  However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3) (emphasis added).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists:

> At this time, the case retains no independent basis for federal jurisdiction. . . . A proper resolution of the two state law causes of action will require a careful analysis of Alabama law--something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake. . . .  We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.

Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).

Here, the Court has determined the complaint fails to state a claim that could serve as

19

the basis for original federal court jurisdiction.  Thus, without the federal claim, the Court concludes any potential state law claims should be dismissed without prejudice.  Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well. . . . [I]t usually should do so without prejudice as to refiling in state court.").

Finally, for the sake of completeness, the Court further finds Plaintiff has not plead the necessary facts for diversity jurisdiction.  While a federal court could have diversity jurisdiction over a state law bad faith breach of contract claim, Plaintiff fails to allege any facts sufficient to establish such jurisdiction as he provides no information about his citizenship or any of Defendants' citizenships.  See 28 U.S.C. § 1332(a).  Thus, the Court is unable to conclude that there is complete diversity of citizenship for diversity jurisdiction purposes.

## II.    Conclusion

For the reasons set forth above, the Court **GRANTS** the request to proceed IFP, for the purpose of dismissal only.  (Doc. no. 2.).  The Court further **REPORTS** and **RECOMMENDS** the case be **DISMISSED** and **CLOSED** because Plaintiff fails to state a federal claim upon which relief can be granted.  The Court also **REPORTS** and **RECOMMENDS** any potential state law claims be **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED and REPORTED and RECOMMENDED this 14th day of July, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

20